**John A. GRESOCK, Jr.**

v.

**CITY OF PITTSBURGH CIVIL SERVICE COMMISSION,
Appellant.**

Commonwealth Court of Pennsylvania.

Argued June 5, 1997.

Decided July 28, 1997.

Marianne S. Malloy, Assistant City Solicitor, Pittsburgh, for appellant.

William C. Kaczynski, Pittsburgh, for appellee.

Before PELLEGRINI and FLAHERTY, JJ., and SILVESTRI, Senior Judge.

FLAHERTY, Judge.

The City of Pittsburgh (City) appeals from an order of the Court of Common Pleas of Allegheny County (trial court) reversing the decision of the City of Pittsburgh Civil Service Commission (Commission) denying the appeal of John A. Gresock, Jr. (Claimant) concerning the termination of his employment for economic reasons. We affirm.

Claimant was a project architect for the City in the Department of Engineering and Construction (Department) for almost four years. On August 5, 1994, the City terminated Claimant to derive the economic benefits from a workforce reduction.

The Mayor's budget office directed the Department Director, Fred Reginella, to reduce his overall budget by twenty-five (25) percent. In compliance with this order, Mr. Reginella decided to eliminate two of the six project architects and requested a seniority roster from the Personnel Department (Personnel) to determine which architects had the least seniority.

In calculating the seniority of all the project architects, Personnel Administrator, Jody Reinsel, gave each employee credit toward his or her total seniority by including all time that the employee spent in a full time

position with benefits in any department of the City. This method of calculating seniority is called "bridging" previous service. Ms. Reinsel testified that the City has used this method of calculating seniority for the past seven years that she has been employed in Personnel. As a result of this seniority calculation, Ms. Reinsel found that Claimant and Casimir Pelligrini were the two least senior employees. Based on Ms. Reinsel's findings, the Department Director, Mr. Reginella, laid off those two project architects.

Kevin Silson was a project architect within the Department who was not laid off based on Ms. Reinsel's seniority calculation. Silson worked for the City's Department of Parks and Recreation from August, 1974 to September, 1980. In May, 1991, Silson began his current employment with the City. Mr. Silson would have less seniority than Claimant if the City did not bridge his time for purposes of calculating seniority. Claimant challenged the manner in which seniority was calculated and appealed his termination to the Commission which denied his appeal. Claimant appealed to the trial court which reversed.

The City raises the following issues here on appeal: (1) whether the trial court erred by admitting additional documentary evidence, in the form of affidavits, when it was primarily relying on the record from below without conducting a *de novo* hearing; and (2) whether the City's method of calculating employee seniority for purposes of economic layoffs is legally permissible.

■ Our review, when a trial court has limited itself to the record before the Commission, is limited to determining whether the Commission's order violated the employee's constitutional rights, whether the Commission manifestly abused its discretion, committed an error of law, or whether the Commission's decision was supported by substantial evidence. *Sammons v. Civil Service Commission of Philadelphia*, 673 A.2d 998, 1001 n. 5 (Pa.Cmwlth.1996), *petition for allowance of appeal granted*, 546 Pa. 651, 683 A.2d 887 (1996).[1]

---

1. The trial court ordered discovery and admitted affidavits to supplement the record certified by

the Commission. A new hearing, with the attributes of new testimony, authentication of docu-

## I

The City argues that the trial court erred by allowing discovery and by accepting affidavits from individuals who did not testify before the Commission because the trial court made no finding that the record certified from the Commission was incomplete. The City maintains that, when a court of common pleas sits as an appellate court to review the decision of a local agency, it can only hear the appeal on the record certified by the agency in accordance with Section 754(b) of the Local Agency Law.[2] Once the trial court decided not to hold a *de novo* hearing, it could not base its reversal of the Commission's decision on affidavits which were not part of the record below because the City had no opportunity to cross-examine the affiants or ascertain the authenticity of the documents submitted to the court.[3]

 This court has defined a *de novo* hearing as " 'a new hearing or hearing for the second time, contemplating an entire trial in [the] same manner in which [the] matter was originally heard and a review of previous hearings.' " *Pendergast v. City of Hazleton,* 102 Pa.Cmwlth. 556, 519 A.2d 540, 542 (1986) (alterations in original) (quoting Blacks Law Dictionary, 649 (5th ed. 1979)). In order for proceedings before a trial court to be *de novo,* under this definition, the trial court must conduct proceedings with the attributes of the fact finding process, for example, the admission of documentary and testimonial evidence, conducting direct and cross-examination, and making credibility determinations, and must conduct a review of the adjudicatory process below. In the instant case, although the trial court reviewed the action taken by the Commission, it did not conduct a hearing in the same manner as originally heard. The trial court, therefore, erroneously admitted additional evidence because it did not conduct *de novo* review.

The trial court, however, did not base its decision on new findings of fact, stating that it "accepted this case on briefs of counsel and the record." (trial court opinion at 1). Nowhere in the record, as certified from the Commission, is there evidence that Silson was properly reinstated.[4] Also, there is no evidence in the record of a written policy, rule, or ordinance properly promulgated or otherwise published by the Commission or the City government which permits City officials to bridge the service time of a City employee who previously served the City and who was not properly reinstated. The lack of such a document in the record served as the basis for the trial court's decision. After reviewing the facts as they existed in the certified record, the trial court concluded that "the City's actions ... were unlawful and illegal, and the Commission committed clear error in refusing to grant [claimant] relief." (trial court opinion at 9).

 The trial court's scope of review in the instant matter, which was in an appellate posture, is identical to our scope of review. *Milisits v. City of Pittsburgh,* 695 A.2d 895 (Pa.Cmwlth.1997). Therefore, the trial court acted within it scope of review sitting as an appellate court when it determined that the Commission committed legal error in denying relief to Claimant under the facts as they already existed in the record without relying on the affidavits. Although the trial court

ments, and cross-examination, for the purpose of eliciting additional or disputed facts, did not occur. Therefore, the trial court did not admit additional testimony which is required to change the scope of review. Our review when a lower court does admit additional testimony in an appeal from a civil service commission is to determine whether or not the trial court abused its discretion or committed an error of law. *In re Appeal of Arnold Kriss,* 57 Pa.Cmwlth. 326, 426 A.2d 1216, 1218 (1981).

2. 2 Pa.C.S. § 754(b).

3. Claimant asserts that the City waived this argument because the City failed to object to the

admission of documentary evidence and also submitted affidavits. The record, however, reveals that the City filed a motion to quash Claimant's discovery request for additional documents wherein it argued, as it argues here, that the certified record from the Commission was complete and was the result from a full and fair hearing which prevented *de novo* review under Section 754(b) of the Local Agency Law, 2 Pa. C.S. § 754(b). Therefore, the City adequately preserved this issue for appellate review.

4. Additionally, the City admits in its brief to this court that Silson was not reinstated and that he was a new hire. (Appellant's Brief at 13).

improperly admitted affidavits to supplement the record without subjecting the affiants to cross-examination by the City or conducting a hearing, the trial court's error is harmless because it did not prejudice the City and the new evidence was merely surplusage to the overwhelming evidence of record that served as the basis for the trial court's decision. *Commonwealth v. Duffey*, 519 Pa. 348, 366, 548 A.2d 1178, 1186 (1988).

## II

The City also argues that, where the City needs to reduce its workforce for economic reasons, the least senior employee must be suspended first in accordance with Section 20.1 of the General Civil Service portion of the Second Class City Code (Code).[5] The City maintains that, although seniority shall be used to determine which employees are to be laid off during economic reductions in the workforce, there is nothing in the civil service laws or the Commission's rules which dictate how seniority is to be calculated. Also, Section 21 of the Code requires the Commission to maintain official rosters of City employees. 53 P.S. § 23455. Under the City of Pittsburgh Code of Ordinances, the Director of Personnel and the Civil Service Commission have authority to administer the personnel system. Therefore, the City argues, the Director of Personnel has the authority and discretion to set administrative policies including an unwritten policy of bridging time so long as it is not unlawful, or arbitrary. We disagree.

An understanding of the legislative purpose underlying the civil service laws in the Commonwealth is essential to resolving the matter before us and applying the Code provisions to the instant case. The express purpose of the Code is to "furnish a complete and exclusive system for the appointment, promotion, reduction, transfer, removal, or reinstatement of all officers, clerks, laborers, and other employees in the civil service of the cities of the second class in this commonwealth." Section 28 of the Code, 53 P.S. § 23461. After examining and interpreting

the general scheme of the civil service laws within the Commonwealth, our Supreme Court concluded that "[t]he fundamental purpose of civil service acts is to regulate and improve civil service in the Commonwealth." *In re Geis*, 341 Pa. 413, 416, 19 A.2d 368, 369 (1941). This purpose is accomplished by having implemented a system whereby employees in public service are selected because of their qualifications and whereby faithful, competent service is rewarded by securing an employee's tenure in office. *Id.* Our Supreme Court, therefore, has long recognized that both the public employer and the civil servant are better served through a legitimate scheme built on merit and fairness rather than one where civil service is either endangered or secured by politics.

Section 20.1 of the Code provides the following:

> If for reasons of economy, lack of funds, abolition of position or positions, or for any other reasons it becomes necessary for any city of the second class to reduce the number of employees then, the city shall follow the following procedure:
>
> . . . .
>
> . . . [T]he reduction shall be effected by suspending the last employe or employees regardless of title or classification, including probationers, provisional and substitute employees that have been appointed. Such removal shall be accomplished by suspending in numerical order, commencing with the last employe appointed, all recent appointees until such reduction shall have been accomplished.

53 P.S. § 23454. The Code further provides that "no person shall be appointed, transferred, reinstated, or promoted, as an officer, clerk, employe, or laborer, in the civil service under the government of any city of the second class, in any manner or by any means other than those prescribed in the act." Section 1 of the Code, 53 P.S. § 23431. Therefore, when laying off city employees for economic reasons, the Code requires city

---

5. Act of May 23, 1907, P.L. 206, *added by* Section 1 of the Act of June 20, 1947, P.L. 663, *as amended,* 53 P.S. § 23454.

officials to consider only seniority and to remove the least senior employees first.

■ The Code, however, also requires the civil service commission in each city of the second class to "[p]rescribe, amend and enforce rules and regulations for carrying into effect the provisions of [the] act." Section 6 of the Code, 53 P.S. § 23436. Section 17 of the Code requires each civil service commission in cities of the second class to "promulgate rules relating to transfers and reinstatements in service, to be approved by the mayor." 53 P.S. § 23450. Section 8 of the Code provides that rules and regulations pertaining to promotions and dismissals must be published to provide public notice. 53 P.S. § 23440. Therefore, while the Commission has the authority to implement and supplement the provisions of the Code with rules and regulations that are consistent with the Code, the Commission also has the duty to publish such rules to provide notice and insure fairness in compliance with the purpose of the Code. Pursuant to aforementioned enabling provisions in the Code, rules promulgated by the Commission have the same force and effect as the Code in regulating civil service in the City.

In compliance with the above-mentioned Code provisions, the Commission promulgated Rule X to establish a procedure for the reinstatement of former City employees. Rule X provides, in relevant part, the following:

> Section 2. Reinstatement shall be effected in the following manner:
>
> A. The appointing officer having jurisdiction over the position proposed shall advise the Commission in writing (1) that there is a vacancy in the said position, (2) of the name and address of the person nominated for reinstatement together with full particulars concerning the record of the said nominee and the circumstances connected with his/her separation from the service, and (3) such other information, including the nature of the position and the compensation attached thereto, as will permit the Commission to decide intelligently either for or against the proposed reinstatement.

> B. Upon receipt of the aforesaid information from the appointing officer and the written request of the applicant for reinstatement, the Commission may grant an interview to the applicant, shall consider the proposed reinstatement and approve or disapprove it, and shall advise the appointing officer of its action in writing within ten (10) calendar days from receipt of the proposal. If the Commission approves the reinstatement, the appointing officer shall reinstate the nominee within seven (7) calendar days. If the Commission disapproves, the nominee shall be ineligible thereafter for reinstatement under this rule.

(R.R. at 45a). Rule X, therefore, binds the Commission and City officials to an established procedure for reinstating City employees. Moreover, the rule limits the availability of reinstatement to a period not to exceed ten calendar days from the date that the Commission receives the requisite information from the appointing officer. If the Commission disapproves of reinstatement at this time, reinstatement is no longer available to the City employee.

■ In *Borough of Blawnox Council v. Olszewski*, 505 Pa. 176, 477 A.2d 1322 (1984), our Supreme Court stated that "[t]he provisions by which the civil service operates constitute a strict framework of operations by which no employee may be appointed, or transferred, reinstated, or discharged in any manner or by any means other than those specified by statutes regulating civil service." *Id.* at 184, 477 A.2d at 1326. Therefore, the Commission's Rule X binds the Commission and City officials, and employees must be reinstated in strict compliance with that rule.

The significance of obtaining reinstatement is that additional benefits accrue to the reinstated employee as a result of bridging the time of service to include time previously served with the City. In addition to increased job security protection from layoffs, a reinstated employee enjoys increased vacation time, sick leave, and retirement benefits. Without formal approval by the Commission at the time of rehire, employees cannot obtain the status of reinstatement with the benefits that accrue to them from the

bridged time. There is no evidence in the record that Silson was formally reinstated by the Commission. Silson's time was, therefore, bridged by City officials pursuant to an unwritten, unpublished rule.

The very notion of an unpublished, unwritten rule defies the purposes of the merit-based civil service system, originally implemented to diminish political or other types of favoritism in public service. The Code requires that City rules for the implementation of the Code must be promulgated to provide public notice and insure the equitable application of such rules. 53 P.S. § 23440. An unwritten rule for calculating seniority, which has the force of law, is expressly prohibited by the Code, *Id.*, and is an anathema to American jurisprudence. When no one has notice of a rule's existence or contents, City officials can choose to use, or not use, the rule according to their own capriciousness; there can be no accountability.

 We agree with the reasoning of the learned trial court judge, the Honorable Warren Watson, who stated the following in rendering his decision in the instant matter:

> The equal protection clauses of the Constitution of the Commonwealth of Pennsylvania and the Fourteenth Amendment to the United states Constitution[ ] are directed at every form of governmental action, and strictly prohibit the discriminatory enforcement or application of laws. *Commonwealth v. Stinnett*, 356 Pa.Super. 83, 93 514 A.2d 154, 159 (1986). The essence of the constitutional guarantees to due process is fundamental fairness in view of all of the facts and circumstances in the case. *Mercy Convalescent Home, Inc. v. Department of Public Welfare*, 96 Pa.Cmwlth. 217, 506 A.2d 1010, 1013 (1986). The substantive protections of due process are meant to protect citizens from arbitrary and irrational actions of the government. *Parkway Garage, Inc. v. City of Philadelphia*, 5 F.3d 685, 692 (3d Cir.1993). Procedural due process is designed to protect individuals from deprivations of life, liberty or property without due process of law, and the "amount of process that is due" depends upon the nature of the interest at stake, but includes as a root requirement both notice of deprivation and fair hearing. *School District of Philadelphia v. Pennsylvania Milk Marketing Board*, 877 F.Supp. 245, 253 (E.D.Pa.1995). Here, there was no such opportunity or fair notice of seniority calculation since the City never followed the required procedures at the time of alleged reinstatement.

(trial court opinion at 8–9) (citations omitted).

 Absent a properly promulgated rule, the Commission can only bridge a City employee's time if that employee has been properly reinstated. The trial court properly determined that the Commission must formally reinstate a City employee in compliance with the Code and the Commission's own rules to qualify a City employee for the benefits which accrue from formal reinstatement. We, therefore, hold that Claimant was improperly determined to be the less senior employee and laid off because Silson was not properly reinstated and because neither the City, in its home-rule charter or its Code of Ordinances, nor the Commission has promulgated a written rule providing for the calculation of seniority absent reinstatement. This lay-off practice violates the express provisions of the Code as well as the express purpose of the civil service laws. In summary, Claimant had more seniority than Silson, and he must be restored to his previous employment position as ordered by the trial court.

Accordingly, we affirm the order of the trial court.

### ORDER

AND NOW, this 28th day of July, 1997, the order of the Court of Common Pleas of Allegheny County, dated September 23, 1996, at Docket No. SA 94–3358, is hereby affirmed.

SILVESTRI, Senior Judge, dissenting.

Because I disagree with the majority's conclusion that in order to "bridge" previous service time for purposes of calculating an employee's seniority, a formal "reinstatement" pursuant to Section 28 of the General

Civil Service portion of the Second Class City Code (Code) [1] is required, I dissent.

As noted by the majority, Section 20.1 of the Code, 53 P.S. § 23454, dictates that seniority be used by the City of Pittsburgh (City) when determining which employees are to be laid off during economic reductions in the workforce. This Section provides as follows:

> If for reasons of economy, lack of funds, abolition of position or positions, or for any other reasons it becomes necessary for any city of the second class to reduce the number of employees then, the city shall follow the following procedure:
>
> . . . .
>
> ... [T]he reduction shall be effected by suspending the last employe or employees regardless of title or classification, including probationers, provisional and substitute employees that have been appointed. Such removal shall be accomplished by suspending in numerical order, commencing with the last employe appointed, all recent appointees until such reduction shall have been accomplished.

While the foregoing requires that seniority be used by the City in determining which employees are to be laid off during economic reductions in the workforce, contrary to the majority's conclusion, there is nothing in the statute which dictates how the City is to calculate seniority.

Jody Reinsel, the City's Personnel Administrator, testified that in the seven years that she has been employed with the City's personnel department, the method of calculating an employee's seniority has been by crediting an employee for all full time benefitted employment in any City department. This method of calculating seniority is referred to as "bridging" since one's previous service is "bridged" together with one's current service. The majority would hold, as did the trial court, that the City is only permitted to "bridge" previous service time where an employee has been formally "reinstated" pursuant to Rule X of the Code, 53 P.S. § 23431 (Rule X sets forth who is Eligible for Rein-

statement *to a previously held position* and the method of such Reinstatement, see Majority Opinion, pp. 167 & 168 for text of Rule X). The majority views the bridging of previous service for purposes of calculating seniority as a benefit of reinstatement; however, there is nothing in Rule X, nor the Code in general, from which such a conclusion can be drawn. Moreover, the majority fails to cite any statutory authority for the imposition of such a requirement.

Nothing in the Code prohibits the City from using its method of calculating seniority by bridging an employee's previous full time benefited service with current service. The evidence of record reveals that the City's method of calculation is a longstanding uniformly administered policy, which is not arbitrary and which does not deprive any employee of a constitutionally protected interest. Thus, I would reverse the trial court's conclusion that the City's method of calculating seniority violates due process.

---

**1.** Act of May 23, 1907, P.L. 206, *added by* Section 1 of the Act of June 20, 1947, P.L. 663, *as* *amended,* 53 P.S. § 23461.