**Arthur JOHNSON**

**v.**

**ALLEGHENY INTERMEDIATE UNIT.**

**Appeal of: Pennsylvania Department of Education.**

Commonwealth Court of Pennsylvania.

Argued Sept. 12, 2012.
Decided Dec. 13, 2012.

Thomas W. Scott, Harrisburg, for appellee Arthur Johnson.

BEFORE: PELLEGRINI, President Judge, and McGINLEY, Judge, and COHN JUBELIRER, Judge, and SIMPSON, Judge, and BROBSON, Judge, and McCULLOUGH, Judge, and COVEY, Judge.

OPINION BY President Judge PELLEGRINI.

The Pennsylvania Department of Education (Department) appeals the order of the Court of Common Pleas of Allegheny County (trial court) permanently enjoining the Allegheny Intermediate Unit (AIU) from terminating Arthur Johnson's (Johnson) employment pursuant to the provisions of Section 111(e)(1) of the Public School Code of 1949 (School Code).[1] We affirm.

Howard G. Hopkirk, Senior Deputy Attorney General, Harrisburg, for appellant.

On July 21, 1983, Johnson was convicted of felony voluntary manslaughter under

1. Act of March 10, 1949, P.L. 30, added by the Act of July 1, 1985, P.L. 129, *as amended*, 24 P.S. § 1–111(e)(1). As presently enacted through the amendments of Act 82 of 2012, Act of June 30, 2012, P.L. 684, effective July 1, 2012, Section 111 of the School Code states, in pertinent part:

 **Criminal History of Employes and Prospective Employes; Conviction of [Employes of] Certain Offenses.—**
 (a.1) Beginning April 1, 2007, this section shall apply to all current and prospective employes of public and private schools, intermediate units and area vocational-technical schools, including, but not limited to, teachers. . . .

 \* \* \*

 (e) No person subject to this act shall be employed or remain employed in a public or private school, intermediate unit or area vocational-technical school where a report of criminal history record information or a form submitted by an employe under subsection (j) indicates the person has been convicted of any of the following offenses:

 (1) An offense under one or more of the following provisions of Title 18 of the Pennsylvania Consolidated Statutes:
 Chapter 25 (relating to criminal homicide).
 Section 2702 (relating to aggravated assault).
 Section 2709.1 (relating to stalking).
 Section 2901 (relating to kidnapping).
 Section 2902 (relating to unlawful restraint).
 Section 2910 (relating to luring a child into a motor vehicle or structure).
 Section 3121 (relating to rape).
 Section 3122.1 (relating to statutory sexual assault).
 Section 3123 (relating to involuntary deviate sexual intercourse).
 Section 3124.1 (relating to sexual assault).
 Section 3124.2 (relating to institutional sexual assault).
 Section 3125 (relating to aggravated indecent assault).
 Section 3126 (relating to indecent assault).

Section 2503 of the Crimes Code, 18 Pa. C.S. § 2503. 24 P.S. § 1–111(e) provided that a conviction for one of its enumerated offenses within the preceding five years, including all homicide offenses in Chapter 25 of the Crimes Code, precluded an applicant's employment by a school in the Commonwealth. Johnson was released from probation after completing a five-year term of imprisonment and a five-year probationary term. Johnson disclosed his criminal history to the Allegheny Intermediate Unit (AIU) and because his voluntary manslaughter conviction was outside the five-year timeframe, AIU was able to hire him as a van driver. In 2004, follow-

ing training, AIU placed Johnson in a "Fatherhood Facilitator" position with the Fathers Alliance Program through which he counsels young fathers about child development and their role in child development. Johnson has performed his job duties in an exemplary fashion since that time.

The five-year impediment to school employment for those convicted of felony homicide was converted to a lifetime ban by Section 1 of Act 24 of 2011 (Act 24)[2] which amended 24 P.S. § 1–111(e) and which also added new offenses to the list of disqualifying convictions.[3] To implement the Act, the Department also issued a

Section 3127 (relating to indecent exposure).

Section 3129 (relating to sexual intercourse with animal).

Section 4302 (relating to incest).

Section 4303 (relating to concealing death of child).

Section 4304 (relating to endangering welfare of children).

Section 4305 (relating to dealing in infant children).

A felony offense under section 5902(b) (relating to prostitution and related offenses).

Section 5903(c) or (d) (relating to obscene and other sexual materials and performances).

Section 6301(a)(1) (relating to corruption of minors).

Section 6312 (relating to sexual abuse of children).

Section 6318 (relating to unlawful contact with minor).

Section 6319 (relating to solicitation of minors to traffic drugs).

Section 6320 (relating to sexual exploitation of children).

(2) An offense designated as a felony under the act [known as "The Controlled Substance, Drug, Device and Cosmetic Act" (Drug Act), Act of April 14, 1972, P.L. 233, *as amended*, 35 P.S. §§ 780–101—780–144....]

24 P.S. § 1–111(a.1), (e)(1), (2).

**2.** Act of June 30, 2011, P.L. 112, effective September 28, 2011.

**3.** Act 24 added Subsection (f.1) establishing ten, five and three-year bans to employment for applicants convicted for offenses not listed in 24 P.S. § 1–111(e). The ten-year ban relates to convictions for all other offenses graded as a first, second or third-degree felony; the five-year ban relates to convictions for all other offenses graded as a first-degree misdemeanor; and the three-year ban relates to more than one conviction for 75 Pa.C.S. § 3802(a), (b), (c) or (d) (relating to driving under the influence of alcohol or a controlled substance). 24 P.S. § 1–111(f.1)(1), (2) and (3). Act 24 also added Subsection (j)(1) requiring the Department to develop a standardized form for applicants and current employees to report convictions for offenses listed in 24 P.S. § 1–111(e); Subsection (j)(2) requiring current employees to report convictions within 90 days; Subsection (j)(4) requiring employees to report an arrest or conviction for one of the enumerated offenses on an ongoing basis within 72 hours of the arrest or conviction; Subsection (j)(5) requiring administrators to compel employees to submit a current report of criminal history record information if there is a reasonable belief that the employee has had an arrest or conviction that must be reported; and Subsection (j)(6) providing that the failure to report an arrest or conviction for a listed crime may result in discipline or conviction for 18 Pa.C.S. § 4904 (relating to unsworn falsification to authorities).

Basic Education Circular (BEC) to provide school administrators with guidance concerning the duties imposed on them under Act 24 which provided that the Act 24 amendments prohibit the continued employment of any current employee who has a conviction for a 24 P.S. § 1–111(e) reportable offense. The Department has also informed school administrators that it will move to sanction administrators who fail to act as required by 24 P.S. § 1–111(e). As required by 24 P.S. § 1–111(j)(1), the Department developed a Form PDE–6004 to be used by current and prospective employees to report arrests or convictions for 24 P.S. § 1–111(e) offenses. Johnson reported his conviction.

As a result, on January 4, 2012, AIU sent Johnson notice of its intention to suspend his employment under the 24 P.S. § 1–111(e) lifetime ban on school employment for anyone convicted of felony homicide. Following a pre-termination hearing, Johnson was suspended without pay based on his pre-employment disqualifying conviction. AIU then provided Johnson with a statement of charges that stated his employment was being terminated because of the lifetime ban on school employment imposed by 24 P.S. § 1–111(e) if a person has been convicted of one of the disqualifying offenses.

■ Before the formal hearing could be held on the statement of charges, Johnson filed a complaint in the trial court seeking declaratory and injunctive relief to enjoin AIU from terminating his employment under 24 P.S. § 1–111(e), seeking a declaration[4] that his termination:

● violates his due process rights as guaranteed by Article 1, Section 1 of the Pennsylvania Constitution[5] because it is not rationally related to any interest sought to be protected because it is based on a remote conviction and it is unrelated to his ability to perform the duties of his position.

● violates his due process rights under the Pennsylvania Constitution because it retroactively removes his right to continued employment based on acts predating the amendments and retroactively making him unemployable when he was legally employable by AIU prior to the amendments.

4. Johnson also sought a declaration that 24 P.S. § 1–111(e) does not require the termination of employees with pre-employment convictions who were employed prior to Act 24's effective date because it retained the word "applicant" and it did not state that it applies to all current employees. Subsequent to the filing of the instant complaint, the General Assembly enacted Act 82 of 2012, effective July 1, 2012, which further amended 24 P.S. § 1–111(e)(1) which now states, in pertinent part, that "[n]o person subject to this act shall be employed *or remain employed* in a public … school … where a report of criminal history record information or a form submitted by an employe under subsection (j) indicates the person has been convicted of … [a]n offense under … Chapter 25 (relating to criminal homicide)." (emphasis added). Thus, the superseding version of 24 P.S. § 1–111(e)(1) applies to current employees by its plain language, clearly precludes the hiring of applicants who have been convicted of one of its enumerated offenses, and requires the termination of current employees like Johnson who have such a conviction. As a result, the question of whether the Act 24 version of 24 P.S. § 1–111(e) applies to current employees as contained in Count I of Johnson's complaint is now moot and cannot provide an alternative basis upon which the trial court's order can be affirmed.

5. Article 1, Section 1 states:

All men are born equally free and independent, and have certain inherent and indefeasible rights, among which are those of enjoying and defending life and liberty, of acquiring, possessing and protecting property and reputation, and of pursuing their own happiness.

Pa. Const. art. I, § 1.

• violates the *Ex Post Facto* Clause of Article 1, Section 17 of the Pennsylvania Constitution[6] because it is penal in nature and increases the punishment for his past crime by preventing his current or future school employment.

The Department filed a motion to intervene as an indispensable party. By order dated April 12, 2012, the trial court granted Johnson a permanent injunction finding that it violated the *Ex Post Facto* Clause of the Pennsylvania Constitution and granted the Department's motion to intervene. On April 23, 2012, the Department filed the instant appeal of the trial court's order.[7]

In this appeal,[8] the Department claims that the trial court erred in granting the permanent injunction because Johnson's termination under 24 P.S. § 1–111(e)(1) does not violate the *Ex Post Facto* Clause of the Pennsylvania Constitution. The Department also argues that the trial court's order cannot be affirmed on the alternate bases claimed by Johnson, *i.e.*, that his termination under 24 P.S. § 1–111(e)(1) violates substantive due process under the Pennsylvania Constitution.

As a preliminary matter, it must be noted that a statute that has been duly enacted by the General Assembly is presumed to be valid and it will not be de-

clared to be unconstitutional unless it clearly, palpably and plainly violates the Constitution. *West Mifflin Area School District v. Zahorchak*, 607 Pa. 153, 163, 4 A.3d 1042, 1048 (2010). Further, a party who questions the constitutionality of a statute bears a heavy burden of persuasion to overcome this presumption. *Barrel of Monkeys, LLC v. Allegheny County*, 39 A.3d 559, 563 (Pa.Cmwlth.2012).

There are two kinds of constitutional challenges: they either attack a statute on its face or as it is applied in a particular case. *Lehman v. Pennsylvania State Police*, 576 Pa. 365, 380, 839 A.2d 265, 275 (2003). As the Pennsylvania Superior Court has explained:

A facial attack tests a law's constitutionality based on its text alone and does not consider the facts or circumstances of a particular case. An as-applied attack, in contrast, does not contend that a law is unconstitutional as written but that its application to a particular person under particular circumstances deprived that person of a constitutional right. . . .

*Commonwealth v. Brown*, 26 A.3d 485, 493 (Pa.Super.2011) (citation omitted). In this case, Johnson's complaint only asks that we declare 24 P.S. § 1–111(e)(1) unconstitutional as applied to his employment with AIU.

6. Article 1, Section 17 states:

No *ex post facto law*, nor any law impairing the obligation of contracts, or making irrevocable any grant of special privileges or immunities, shall be passed.
Pa. Const. art. I, § 17.

7. On June 7, 2012, the trial court issued a Statement in Lieu of Opinion pursuant to Pa. R.A.P.1925(a) explaining that the preliminary injunction was granted and later made permanent, because the amendment to 24 P.S. § 1–111(e) is an *ex post facto* enactment that must be enjoined.

8. When reviewing the grant or denial of a final or permanent injunction, our review is limited to determining whether the trial court committed an error of law. *Buffalo Township v. Jones*, 571 Pa. 637, 644, 813 A.2d 659, 663–64 (2002), *cert. denied*, 540 U.S. 821, 124 S.Ct. 134, 157 L.Ed.2d 41 (2003). In order to establish a claim for a permanent injunction, a party must establish a clear right to relief. *Id.* Unlike a claim for a preliminary injunction, the party need not establish irreparable harm or immediate relief. *Id.* A trial court may issue a final injunction if such relief is necessary to prevent a legal wrong for which there is no adequate redress at law. *Id.*

## I.

 The Department claims that the trial court erred in granting the permanent injunction because Johnson's termination under 24 P.S. § 1–111(e)(1) does not violate the *Ex Post Facto* Clause of the Pennsylvania Constitution. An *ex post facto* law is one that imposes punishment for past acts. *Galena v. Department of State Professional and Occupational Affairs,* 122 Pa.Cmwlth. 315, 551 A.2d 676, 679 (1988). The *Ex Post Facto* Clause of the Pennsylvania Constitution is a restriction on the actions of the General Assembly and is an attempt to preserve an individual's right to fair warning that his conduct will result in criminal penalties. *Id.* A statute may violate the *Ex Post Facto* Clause by, *inter alia,* changing the punishment for a crime and making it greater than when the criminal act was committed. *Lehman,* 576 Pa. at 371, 839 A.2d at 269.

 A statute can violate the *Ex Post Facto* Clause in two ways. *Lehman,* 576 Pa. at 373, 839 A.2d at 271. One way is when the General Assembly's intent was punitive; if so, the statute violates the *Ex Post Facto* Clause. *Id.* However, if the General Assembly's intent is found to be civil and non-punitive, a statute can still violate the *Ex Post Facto* Clause if it is so punitive in either its purpose or its effect so as to negate the General Assembly's intent that it be civil. *Id.* at 374, 839 A.2d at 271.

In *Galena,* we addressed whether the purpose of the Medical Practice Act of 1985 (Medical Act),[9] effective January 1, 1986, relating to the automatic suspension of a physician's medical license based upon a conviction for a felony under the laws of another jurisdiction, was punitive. The prior repealed version of the Medical Act

did not require the automatic license suspension and provided for a hearing prior to the suspension.

In 1978, the State Board of Medicine issued Galena a license to practice medicine and surgery. In October 1986, Galena, while a licensed doctor, was convicted of eight felony counts of knowingly and intentionally distributing or dispensing controlled substances between July 1982 and June 1985 in violation of federal law. In January 1988, the Board issued a notice of the automatic suspension of Galena's medical license and ordered him to surrender his licensure documents.

On appeal to this Court, Galena argued that the Medical Act violated the *Ex Post Facto* Clause by imposing a greater penalty for his crimes. We disagreed, stating:

> [Galena] asserts that the automatic suspension provision of the [Medical] Act operates solely as an additional punishment for his crimes. We are not in agreement. As a physician and surgeon, petitioner held a position in the public trust. In *De Veau v. Braisted,* 363 U.S. 144, 80 S.Ct. 1146, 4 L.Ed.2d 1109 (1960), the Supreme Court stated that our courts have long recognized provisions that disqualify convicted felons from occupying certain employments important to the public interest. The question in each case where an individual suffers unpleasant consequences for prior conduct is whether the aim of the legislature was to punish the individual for the past conduct or whether the restriction of the individual is incidental to a regulation such as proper qualifications for a profession. *Id.* at 159–160, 80 S.Ct. at 1154–55.

In *De Veau,* the Supreme Court upheld a state statute disqualifying convicted felons from holding union office

---

9. Act of December 20, 1985, P.L. 457, *as* *amended,* 63 P.S. §§ 422.1–422.45.

against an *ex post facto* challenge. The Court reasoned that the law did not seek to punish ex-felons, but rather sought to regulate the qualifications for holding union offices. Similarly, the Board in the case *sub judice*, contends and we agree that the purpose of the [Medical] Act is not to punish [Galena], but rather to regulate those persons who practice medicine and surgery in the Commonwealth....

The [Medical] Act specifically provides for both regulation of the medical profession and penalties for failing to abide by those regulations. Under Section 22(b) of the 1985 Act, 63 P.S. § 422.22(b), the requirement of good moral character is a condition of licensure. Section 43(b) of the [Medical] Act recognizes rehabilitation and provides for reinstatement of petitioner's license after ten years on condition that the Board is satisfied that petitioner's progress in personal rehabilitation is such that he is not expected to create a substantial risk of harm to the health and safety of his patients or the public.

While we acknowledge the harsh consequences visited upon [Galena], we note that this was the intention of the legislature in enacting Section 40(b) of the [Medical] Act. In sum, we conclude that Section 40(b) of the [Medical] Act does not operate as an *ex post facto* law and that petitioner's constitutional rights have not been violated. Accordingly, the Board's suspension of petitioner's license is affirmed.

*Galena*, 551 A.2d at 679–80.

In this case, as in *Galena*, the purpose of 24 P.S. § 1–111(e)(1) is not to punish those convicted of the enumerated offenses, but rather is incidental to the regulation of individuals who are employed in the public schools of this Commonwealth for the protection of the students.

As to whether 24 P.S. § 1–111(e)(1) is so punitive in either its purpose or its effect so as to negate the General Assembly's intent that it be civil, the following seven factors are considered as "useful guideposts" in determining whether a statute unconstitutionally violates *ex post facto*: (1) whether the sanction involves an affirmative disability or restraint; (2) whether it has historically been regarded as punishment; (3) whether it comes into play only on a finding of *scienter*; (4) whether its operation will promote the traditional aims of punishment-retribution and deterrence; (5) whether the behavior to which it applies is already a crime; (6) whether the alternative purpose to which it may rationally be connected is assignable for it; and (7) whether it appears excessive in relation to the alternative purpose assigned. *Id.* In applying these factors, only the "clearest proof" that a law is punitive in effect will overcome a legislative categorization to the contrary. *Commonwealth v. Williams*, 574 Pa. 487, 505, 832 A.2d 962, 973 (2003). There is not the "clearest proof" of the seven factors that are required to demonstrate that 24 P.S. § 1–111(e)(1) is so punitive in either its purpose or its effect so as to negate the General Assembly's intent that it be civil in violation of the *Ex Post Facto* Clause.

Regarding the first factor, while the lifelong ban from certain employment positions is harsh, it is not excessive and does not work as an affirmative disability or restraint for *ex post facto* purposes. *Williams*, 574 Pa. at 507, 832 A.2d at 973–74 ("Such liberty is, of course, tempered by the reality that registrants deemed sexually violent predators [with respect to the statute commonly known as Megan's Law, 42 Pa.C.S. §§ 9791–9799.9] may, as a consequence of public notification, be foreclosed from certain employment positions, particularly working with children. But any

such restriction is in direct furtherance of the government's compelling interest in keeping sexually violent predators away from children to the extent possible.").

Regarding the second factor, such an employment ban has not been historically regarded as punishment. *See De Veau,* 363 U.S. at 160, 80 S.Ct. 1146 (holding that forbidding felons from working as union officials is not punishment); *Hawker v. New York,* 170 U.S. 189, 196, 18 S.Ct. 573, 42 L.Ed. 1002 (1898) (holding that prohibiting felons from practicing medicine is not punishment).

Regarding the third factor, the employment ban is imposed on all convicted of the enumerated crimes; there is no independent finding of *scienter* necessary for the ban to be imposed. *See Lehman,* 576 Pa. at 376, 839 A.2d at 272 ("The third factor to consider is whether the sanction comes into play only on a finding of *scienter.* No finding of *scienter* is required for a person to be denied the ability to purchase a firearm. The disability is imposed on all those who have committed certain crimes in the past, regardless of intent or awareness of the statute."); *Commonwealth v. Abraham,* 996 A.2d 1090, 1094 (Pa.Super.), *appeal granted in part,* 607 Pa. 618, 9 A.3d 1133 (2010) ("[T]here is no independent finding of *scienter* needed to trigger forfeiture [of pension benefits]. There is an element of *scienter,* but that is found in the underlying criminal act . . . .").

Regarding the fourth factor, there is no indication that the primary purpose of 24 P.S. § 1–111(e)(1)'s imposition of the lifetime ban is to promote the traditional aims of punishment-retribution and deterrence because it was enacted to prevent those convicted of its enumerated offenses from working in schools. *See Lehman,* 576 Pa. at 376–77, 839 A.2d at 272 ("Section 922(g) [of the Gun Control Act (GCA), 18 U.S.C. § 922(g),] was not enacted to deter; it was

enacted to deny firearms to those Congress concluded should not possess them. Any deterrent effect the GCA has on potential felons is secondary.") (citation omitted).

Regarding the fifth factor, the employment banned under 24 P.S. § 1–111(e)(1) is not criminal. *See Lehman,* 576 Pa. at 377, 839 A.2d at 272–73 ("The fifth factor is whether the behavior to which the disability applies is already a crime. This factor is inapplicable here because appellant has not been charged with violating the statute."); *Williams,* 574 Pa. at 507, 832 A.2d at 973–74 ("[W]hile it must be acknowledged that the procedures whereby an individual is potentially subjected to registration, notification, and counseling are triggered only after conviction of a predicate offense, *see* 42 Pa.C.S. § 9795.4, the United States Supreme Court has concluded that this is of little significance in evaluating whether or not Megan's Law legislation is punitive; the Court explained in *Smith* that, where such legislation is concerned, application to past criminal conduct is 'a necessary beginning point, for recidivism is the statutory concern.' *Smith* [*v. Doe,* 538 U.S. 84, 105, 123 S.Ct. 1140, 155 L.Ed.2d 164 (2003) ].").

Regarding the sixth factor, the lifetime ban is clearly rationally related to a nonpunitive purpose. As stated above, it is to protect students by limiting the individuals employed in the public schools of this Commonwealth to be those of "good moral character." *See Lehman,* 576 Pa. at 377, 839 A.2d at 273 ("The sixth factor is whether the alternative purpose to which the disability may rationally be connected is assignable for it. Stated another way, this factor asks whether the statute has a rational connection to a non-punitive purpose. Prohibiting convicted felons from buying firearms is rationally connected to the remedial goal of protecting the public

from the risk of firearms in the hands of convicted criminals. . . .").

Finally, regarding the seventh factor, although the lifetime ban is based on prior criminal activity and it may be harsh, its application is not so excessive as to transform it from a civil consequence into a criminal punishment in violation of the *Ex Post Facto* Clause. *See Williams*, 574 Pa. at 520, 832 A.2d at 982 ("The *Verniero* panel expanded upon these observations by noting that the effects of a measure must be 'extremely onerous' to constitute punishment, as even the deprivation of one's livelihood does not qualify. *See [E.B. v. Verniero*, 119 F.3d 1077, 1101 (3rd Cir. 1997), *cert. denied*, 522 U.S. 1110, 118 S.Ct. 1039, 140 L.Ed.2d 105 (1998) ] . . . ."). Based on the foregoing, the Department is correct that the trial court erred in determining that Johnson's termination under 24 P.S. § 1–111(e)(1) violates the *Ex Post Facto* Clause of the Pennsylvania Constitution.

## II.

■ While the trial court erred in granting the permanent injunction based on a finding that Johnson's termination under 24 P.S. § 1–111(e)(1) violates the *Ex Post Facto* Clause of the Pennsylvania Constitution, it still can be affirmed if the reasons on which Johnson claimed his constitutional rights were violated are valid.[10] One of the reasons that Johnson also claimed the lifetime ban violated his substantive due process rights under Article 1, Section 1 of the Pennsylvania Constitution as applied to him was because that ban is not rationally related to any interest sought to be protected because it is based on a remote conviction and it is unrelated to his ability to perform the duties of his position.

■ To determine whether a statute is unconstitutional under Article 1, Section 1, a substantive due process inquiry must take place. When making that inquiry, we take into consideration the rights of the parties involved subject to the public interests sought to be protected. The Due Process Clause under the Pennsylvania Constitution protects life, liberty and property interests. *Diwara v. State Board of Cosmetology*, 852 A.2d 1279, 1283 (Pa.Cmwlth.2004). The substantive protections of due process are meant to protect citizens from arbitrary and irrational actions of the government. *Gresock v. City of Pittsburgh Civil Service Commission*, 698 A.2d 163, 169 (Pa.Cmwlth.1997).

■ One of the rights Article 1, Section 1 guarantees is an individual's right to engage in any of the common occupations of life. *Warren County Human Services v. State Civil Service Commission*, 844 A.2d 70, 73 (Pa.Cmwlth.), *appeal denied*, 581 Pa. 687, 863 A.2d 1152 (2004); *Nixon v. Department of Public Welfare*, 789 A.2d 376, 380 (Pa.Cmwlth.2001) (*Nixon I* ), *aff'd on other grounds*, 576 Pa. 385, 401, 839 A.2d 277, 288 (2003) (*Nixon II* ); *Hunter v. Port Authority of Allegheny County*, 277 Pa.Super. 4, 419 A.2d 631, 635 (1980). The Pennsylvania Supreme Court has explained:

> [F]or substantive due process rights to attach there must first be the deprivation of a property right or other interest that is constitutionally protected. Pursuant to Article I, Section 1 of the Pennsylvania Constitution, all persons within this Commonwealth possess a protected

---

**10.** This Court may affirm a trial court's order for any reason raised below, regardless of the reason the trial court relied on in its decision. *Maple Street A.M.E. Zion Church v. City of Williamsport*, 7 A.3d 319, 323 n. 3 (Pa. Cmwlth.2010). Moreover, based on our disposition of this issue, we will not reach the other claim raised in this appeal.

interest in the practice of their profession. Thus, after a license to practice a particular profession has been acquired, the licensed professional has a protected property right in the practice of that profession. Nevertheless, the right to practice a chosen profession is subject to the lawful exercise of the power of the State to protect the public health, safety, welfare, and morals by promulgating laws and regulations that reasonably regulate occupations.

*Khan v. State Board of Auctioneer Examiners*, 577 Pa. 166, 183, 842 A.2d 936, 946 (2004) (citations omitted).[11]

 While the right to engage in a particular profession is an important right, it is not a fundamental one. *Nixon II*, 576 Pa. at 400, 401, 839 A.2d at 287, 288; *Warren County Human Services*, 844 A.2d at 73. Thus, "[w]hile a state may regulate a business which affects the public health, safety and welfare, it may not, through regulation, deprive an individual of his right to conduct a lawful business unless it can be shown that such deprivation is reasonably related to the state interest sought to be protected." *Secretary of Revenue v. John's Vending Corporation*, 453 Pa. 488, 492, 309 A.2d 358, 361 (1973). The test for substantive due process in the areas of social and economic legislation is whether the challenged statute has a rational relationship to the valid state objective. *Nixon II*, 576 Pa. at 400, 839 A.2d at 287. Accordingly:

> '(A) law which purports to be an exercise of the police power must not be unreasonable, unduly oppressive or patently beyond the necessities of the case, and the means which it employs must have a real and substantial relation to the objects sought to be attained. Under the guise of protecting the public interests the legislature may not interfere with private business or impose unusual and unnecessary restrictions upon lawful occupations.'

*Adler v. Montefiore Hospital Association of Western Pennsylvania*, 453 Pa. 60, 72, 311 A.2d 634, 640–41 (1973), *cert. denied*, 414 U.S. 1131, 94 S.Ct. 870, 38 L.Ed.2d 755 (1974) (quoting *Gambone v. Commonwealth*, 375 Pa. 547, 551, 101 A.2d 634, 637 (1954)). *See also Pennsylvania Medical Society v. Foster*, 147 Pa.Cmwlth. 528, 608 A.2d 633, 636 (1992) ("An overbroad statute violates substantive due process by depriving a person of a constitutionally protected interest through means which are not rationally related to a valid state objective because they 'sweep unnecessarily broadly.' ") (citations omitted).[12]

---

11. With respect to Johnson's employment as a "Fatherhood Facilitator" position with the AIU in the Fathers Alliance Program, we have previously determined that "nonprofessional public school employees have a property right in their expectation of continued employment and the Board must comply with procedural due process safeguards when dismissing them for cause." *Lewis v. School District of Philadelphia*, 690 A.2d 814, 817 (Pa.Cmwlth.1997) (citations omitted). *See also Dingel v. State Employees' Retirement System*, 62 Pa.Cmwlth. 79, 435 A.2d 664, 668 (1981) ("Where employment is either contractually or statutorily guaranteed, this Court has recognized, as a protected property right, an employee's 'en-forceable expectation of continued employment.' ") (citation omitted).

12. Regarding the "rational basis test" used in evaluating substantive due process challenges under Article 1, Section 1, the Pennsylvania Supreme Court explained:

> [W]ith regard to substantive due process challenges brought under the Pennsylvania Constitution, the rational basis test is that announced by this Court in *Gambone*. Although the due process guarantees provided by the Pennsylvania Constitution are substantially coextensive with those provided by the Fourteenth Amendment, a more restrictive rational basis test is applied un-

■ In this case, the Department argues that the lifetime ban of the employment of school employees who have been convicted of a 24 P.S. § 1–111(e)(1) offense at any prior point in time has a rational basis by furthering the important public interest in regulating the employment qualifications of school employees and the important public safety purpose of maintaining a safe school environment for students. Johnson counters that a lifetime ban from his employment based on a remote disqualifying conviction does not further either of those interests because such a conviction does not relate to his present suitability to perform the duties of his position.

In *Nixon I*, this Court addressed the constitutionality of the provisions of the Older Adults Protective Services Act (OAPSA) [13] which was enacted to protect individuals aged 60 years or older from abuse, neglect, exploitation and abandonment and created a system of reporting and investigating the abuse of older adults. In 1996, the OAPSA was amended to require all applicants for employment in facilities covered by the statute or workers employed in a single facility for less than a year to submit criminal records reports and prohibited facilities from hiring an applicant or retaining an employee if the applicant or employee had been convicted of certain enumerated offenses. In 1997, the OAPSA was again amended, changing the enumerated disqualifying felonies and misdemeanors and removing a ten-year limitation period for convictions involving lesser crimes. A number of former employees who were either terminated from their positions or denied a position in covered facilities under the amended OAPSA and any non-profit social service agency that hires such workers filed an action in this Court seeking a declaration that the OAPSA violated their substantive due process rights under Article 1, Section 1. They argued that the amended OAPSA violated substantive due process because there were no temporal limits on the disqualifying convictions, the prohibition applied to all positions at a covered facility, and there were no exceptions or procedural protections to assess an individual worker's suitability on a case-by-case basis.

In considering the application of substantive due process to such a blanket prohibition of employment based solely on unrelated remote conduct, we explained:

> Where, as here, nearly twenty years has expired since the convictions and the record reveals that the individual has held this position of responsibility for twelve years without any allegation of impropriety, it is ludicrous to contend that these prior acts provide any basis to evaluate his present character.
>
> [* * *]
>
> We are also mindful that such a result runs afoul of the deeply ingrained public policy of this State to avoid unwarranted stigmatization of and unreasonable restrictions upon former offenders. This State in recent years has been unalterably committed to rehabilitation of those

---

der our Constitution. *See [Pennsylvania State Board of Pharmacy v. Pastor*, 441 Pa. 186, 191, 272 A.2d 487, 490–91 (1971)] (explaining that Pennsylvania courts have analyzed due process challenges under rational basis tests "more closely" than the United States Supreme Court). Needless to say, under the rational basis test applied under our Constitution, deference is still given to the General Assembly in that laws are presumed constitutional and the General Assembly therefore does not need to present evidence to sustain their constitutionality. *See O'Donnell v. Casey* [405 A.2d 1006, 1009–10 (Pa.Cmwlth.1979)].
*Nixon II*, 576 Pa. at 401 n. 15, 839 A.2d at 288 n. 15.

**13.** Act of November 6, 1987, P.L. 381, *as amended*, 35 P.S. §§ 10225.101—10225.5102.

persons who have been convicted of criminal offenses. *To forever foreclose a permissible means of gainful employment because of an improvident act in the distant past completely loses sight of any concept of forgiveness for prior errant behavior and adds yet another stumbling block along the difficult road of rehabilitation*. . . .

[U]nder facts such as those presented in this appeal, where the prior convictions do not in any way reflect upon the appellant's present ability to properly discharge the responsibilities required by the position, we hold that the convictions cannot provide a basis for the revocation of a wholesaler's license.

*Nixon I*, 789 A.2d at 381 (quoting *John's Vending Corporation*, 453 Pa. at 494–95, 309 A.2d at 362) (emphasis in original).

Based on the foregoing, we determined that the application of the provisions of the OAPSA prohibiting the hiring or retention of employees based solely on a remote conviction of one of its enumerated offenses violates substantive due process because there was no rational relationship between the offending conduct and the employees' present suitability to perform the duties of their positions or the Commonwealth's interest in protecting older adults. Specifically, we explained:

Petitioners' well-pled facts vividly illustrate the constitutional infirmities present in [the OAPSA] and the draconian impact of its enforcement. They further demonstrate the arbitrary and irrational nature of the challenged provisions and establish that no rational relationship exists between the classification imposed upon Petitioners and a legitimate governmental purpose. Respondents have essentially agreed that Petitioners' conviction records do not reflect upon their present or indeed past ability to successfully perform their jobs in facilities covered by the Act. Respondents admitted Petitioners' factual allegations and agreed that "Petitioners would make excellent care workers for older Pennsylvanians." . . . Accordingly, the Court holds that the criminal records provisions of the Act are unconstitutional as applied to Petitioners and therefore overrules Respondents' preliminary objections. . . .

*Nixon I*, 789 A.2d at 382 (citation to record omitted).[14]

In *Warren County Human Services*, this Court addressed the constitutionality of the provisions of the Child Protective Services Law (CPSL) [15] which was enacted to ensure that each county children and youth agency establish a program of protective services to assess and assist families and children in need, particularly those "most at risk." 23 Pa.C.S. § 6302(b). In 1994, the CPSL was amended to provide that "[i]n no case shall an administrator hire an applicant if the applicant's criminal history record information indicates the applicant has been convicted of . . . Title 18 . . . Section 2702 (relating to aggravated assault). . . ." 23 Pa.C.S. § 6344(c)(2). Prior to the amendment, the CPSL provided that a conviction for one of its enumerated offenses within the preceding five years,

---

14. On appeal, the Supreme Court affirmed our order on equal protection grounds, determining that the OAPSA created an improper classification by permitting the continued employment of those employees with a disqualifying conviction who had worked at a single facility for over one year while prohibiting the continued employment of those employees with a disqualifying conviction who had not worked at a single facility for more than a year. *Nixon II*, 576 Pa. at 403–04, 839 A.2d at 289–90.

15. 23 Pa.C.S. §§ 6301—6385.

including aggravated assault, precluded an applicant's employment.

In 2001, Edward Roberts was hired as a caseworker by a combined county agency, the Forest/Warren Department of Human Services. At the time of hire, Roberts disclosed that he had a 1980 felony conviction for aggravated assault. In 2002, due to a restructuring of the agency into three separate entities, Roberts was required to submit new clearances to be rehired as a caseworker by Warren County Human Services. After he submitted his criminal history and was rehired as a caseworker, he applied for a transfer to Forest County. The Forest County administrator determined that Roberts' conviction precluded his employment under 23 Pa.C.S. § 6344(c)(2) and informed Warren County. Warren County realized that it applied the pre-amendment version of 23 Pa.C.S. § 6344 at the time of Roberts' hire and terminated Roberts' employment based solely on the statutory ban. Roberts appealed to the State Civil Service Commission which declined to apply the ban in 23 Pa.C.S. § 6344(c)(2), concluding that it violated Article 1, Section 1 based on this Court's opinion in *Nixon I.*

On appeal to this Court, Warren County argued, *inter alia,* that the Commission erred in finding that the lifetime ban in 23 Pa.C.S. § 6344(c)(2) violated Article 1, Section 1. We disagreed, explaining:

[S]uch a ban "runs afoul of the deeply ingrained public policy of this State to avoid unwarranted stigmatization of and unreasonable restrictions upon former offenders." *John's Vending,* 453 Pa. at 494–495, 309 A.2d at 362. "To forever foreclose a permissible means of gainful employment because of an improvident act in the distant past completely loses sight of any concept of forgiveness for prior errant behavior and adds yet another stumbling block along the difficult

road of rehabilitation." *Id.; see also* Justice Cappy's and Justice Castille's concurring opinions in *Nixon II.* Here, Warren County has failed to present any rational reason between the classification imposed upon Roberts and a legitimate governmental purpose. To the contrary, it has even admitted that but for Section 6344 of the CPSL, Roberts would not have been removed from his position as his work was exemplary—demonstrating that his remote conviction does not reflect upon his present abilities to perform the duties of a caseworker. Because Section 6344(c), as it relates to aggravated assault, creates limitations that have no temporal proximity to the time of hiring, it does not bear a real and substantial relationship to the Commonwealth's interest in protecting children and is unconstitutional.

*Warren County Human Services,* 844 A.2d at 74 (citation and footnote omitted). *See also Ake v. Bureau of Professional and Occupational Affairs,* 974 A.2d 514, 520 (Pa.Cmwlth.), *appeal denied,* 604 Pa. 708, 987 A.2d 162 (2009) ("*John's Vending* teaches that the nature of the offending conduct and its remoteness in time must be considered where an agency seeks to revoke a professional license on the basis of a conviction. In this case, nearly seven years elapsed between Ake's offending conduct and his application to reactivate his Pennsylvania CPA credentials. While not as long as the 20 years in *John's Vending,* seven years is a substantial interval of time. Moreover, Ake's conduct was isolated to calls made over a two-week period; he has not engaged in similar conduct since his arrest.").

In this case, AIU, at the trial level, failed to present any rational reason that applying the lifetime ban to Johnson served a legitimate governmental purpose. To the contrary, it has even admitted that

but for 24 P.S. § 1–111(e)(1), Johnson would not have been removed from his position as his work was exemplary—demonstrating that his remote conviction does not reflect upon his present abilities to perform the duties of his position with AIU. Moreover, the Department has not proffered a sufficient reason to explain why the crime of which Johnson was convicted nearly 30 years ago is at all predictive of future behavior and continues to warrant the harsh result of a complete ban from his employment with AIU. Because 24 P.S. § 1–111(e)(1) creates a lifetime ban for a homicide offense that has no temporal proximity to Johnson's present ability to perform the duties of his position, and it does not bear a real and substantial relationship to the Commonwealth's interest in protecting children, it is unreasonable, unduly oppressive and patently beyond the necessities of the offense. As a result, 24 P.S. § 1–111(e)(1) imposes unusual and unnecessary restrictions upon Johnson's lawful employment as a "Fatherhood Facilitator" with AIU and it is unconstitutional as violative of his substantive due process rights as guaranteed by Article 1, Section 1 of the Pennsylvania Constitution.

Accordingly, the trial court's order is affirmed.[16]

### ORDER

AND NOW, this 13th day of December, 2012, the order of the Court of Common Pleas of Allegheny County, dated April 12, 2012, at No. GD 12–3329, is affirmed.

---

[16]. Because of the way we have resolved this matter we need not address Johnson's claim that his due process rights under the Pennsylvania Constitution were violated because it retroactively removes his right to continued employment based on acts predating Act 24 and retroactively making him unemployable when he was legally employable by AIU prior to Act 24's enactment.