IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Amaris Ramirez, :
                 Petitioner :
               :
       v. : No. 144 C.D. 2023
               : Argued: December 4, 2023
State Board of Dentistry, :
                Respondent :


BEFORE:   HONORABLE ANNE E. COVEY, Judge
            HONORABLE STACY WALLACE, Judge
            HONORABLE MARY HANNAH LEAVITT, Senior Judge


OPINION
BY JUDGE WALLACE                     FILED: January 11, 2024


Amaris Ramirez (Dr. Ramirez) petitions for review of the January 18, 2023 final adjudication and order of the State Board of Dentistry (Board), which denied her application for licensure as a dentist in Pennsylvania. Dr. Ramirez challenges the Board's decision that she was not entitled to licensure by endorsement under 63 Pa.C.S. § 3111(a). Specifically, she challenges the decision that the dental licensing requirements in the State of Florida, where she is currently licensed as a dentist, are not "substantially equivalent" to the dental licensing requirements in Pennsylvania. *See* 63 Pa.C.S. § 3111(a)(1). After careful review, we affirm.

## I. Background

In 2011, Dr. Ramirez received her "Doctora en Odontología" dental degree from Universidad Iberoamericana in the Dominican Republic. Reproduced Record (R.R.) at 257a, 318a. Universidad Iberoamericana is not accredited by the American

Dental Association Commission on Dental Accreditation (CODA). *Id.* at 318a. Dr. Ramirez practiced dentistry in the Dominican Republic for approximately two years. *Id.* In 2015, she enrolled in the Advanced Education in General Dentistry (AEGD) program at Columbia University in New York City. *Id.* at 319a-20a. Dr. Ramirez completed two years in the AEGD program and received a "Certificate in Advanced Education in General Dentistry" for each year of study. *Id.* at 321a-22a. Dr. Ramirez passed multiple dental licensing examinations and, ultimately, received her Florida dental license in 2019. *Id.* at 319a, 322a. She practiced as a dentist in Florida from December 2019 until November 2020. *Id.* at 322a.

Dr. Ramirez filed an application for licensure in Pennsylvania on December 9, 2021. According to Dr. Ramirez, she applied because her husband "got accepted to medical residency here," and she had to travel back and forth between Florida and Pennsylvania to work and spend time with her family. R.R. at 132a-33a. The Board provisionally denied Dr. Ramirez's application by letter dated January 20, 2022. In its letter, the Board explained Dr. Ramirez did not meet the educational requirements of Pennsylvania's dental licensing regulations because, in relevant part, she did not have a Doctor of Dental Medicine (D.M.D.) or Doctor of Dental Surgery (D.D.S.) degree. *See* 49 Pa. Code § 33.102(a)(2). Moreover, the Board explained Dr. Ramirez was not entitled to licensure by endorsement because Florida's licensing requirements are not substantially equivalent to Pennsylvania's licensing requirements. The Board reiterated that Dr. Ramirez was able to obtain a dental license in Florida without first earning a D.M.D. or D.D.S. degree, and "[t]o meet the 'substantial equivalence' standard . . . the Board requires that the licensing jurisdiction in which an applicant is licensed requires an applicant to have a D.M.D. or D.D.S." R.R. at 41a-42a.

Dr. Ramirez appealed the Board's decision, contending Pennsylvania does not require applicants to have a D.M.D. or D.D.S. degree. Dr. Ramirez cited language in 49 Pa. Code § 33.102(a)(2), which requires applicants from a nonaccredited dental school to complete additional education at an accredited school "that will lead to the awarding of the D.M.D or D.D.S. degree by that school." R.R. at 45a. Dr. Ramirez maintained she completed education that would "ostensibly . . . lead to a D.M.D. or D.D.S. degree," although she did not receive one. *Id.* at 46a-47a. In addition, Dr. Ramirez contended she was entitled to licensure by endorsement because Florida's licensing requirements are substantially equivalent to the licensing requirements in Pennsylvania. She argued the Board was requiring Florida to have equal, rather than substantially equivalent, requirements. Dr. Ramirez asserted the Board violated her right to due process by failing "to adequately investigate or evaluate the criteria for licensure in Florida" and denying the application without notice or an opportunity to be heard. *Id.* at 48a-49a.

The Board delegated the matter to a hearing examiner, who held a hearing via videoconference on March 31, 2022. Dr. Ramirez testified on her own behalf and presented the testimony of Thomas J. Boyle, D.M.D., MAGD, ABGD[1] (Dr. Boyle) an assistant professor at Columbia University Dental School. The Commonwealth's counsel did not present any additional witnesses but argued in support of the Board's decision to deny licensure to Dr. Ramirez.

Relevant here, Dr. Boyle testified he was the former co-director of the AEGD program at Columbia University and helped to design its curriculum. R.R. at 72a-73a. He described the program as appropriate for dental students who already have "some form of [p]re-[d]octorate degree, a DDS or equivalent from another country."

---

[1] "MAGD" stands for Master of the Academy of General Dentistry, while "ABGD" is certification by the American Board of General Dentistry.

*Id.* at 81a. Dr. Boyle testified the AEGD program lasted one year, with the option of a second year. *Id.* at 88a. If a student completed two years of the AEGD program, he or she could then obtain dental licensure in New York State by completing a one-year residency. *Id.* at 88a, 104a. Dr. Ramirez completed two years of the program but did not pursue the residency. *Id.* at 89a.

Dr. Boyle's testimony was unclear as to whether Dr. Ramirez could have obtained a D.M.D. or D.D.S. degree through the AEGD program. Dr. Boyle initially agreed students who completed the AEGD program did not receive a D.M.D. or D.D.S. degree. R.R. at 81a-82a. He testified Columbia University did not offer a program for foreign-trained dentists that awarded a D.M.D. or D.D.S. degree when Dr. Ramirez was a student there. *Id.* at 84a. Dr. Boyle then testified students who completed two years of the AEGD program and the one-year residency received an "[e]quivalent [D.D.S.] degree." *Id.* at 104a-08a.

Notably, Dr. Boyle testified Columbia University began to offer an "advanced standing program" for foreign-trained dentists "[a]bout two years ago" that awards a degree. R.R. at 84a. He compared the AEGD program with the advanced standing program, opining the AEGD program "stands in advance of the advanced standing program. . . . [I]t's certainly above the level of the clinical training they get in an advanced standing program." *Id.* at 101a-02a.

The hearing examiner issued a proposed adjudication and order denying Dr. Ramirez's application on July 5, 2022. The hearing examiner focused on Florida's licensing requirements with respect to graduates of nonaccredited dental schools. He reasoned Florida permits an applicant who graduated from a nonaccredited dental school to obtain a license by completing two years in an accredited, supplemental general dentistry program. R.R. at 333a-34a (citing Fla. Stat. § 466.006(3) (2022)).

4

In contrast, the hearing examiner observed, Pennsylvania requires an applicant who graduated from a nonaccredited dental school to complete additional education at an accredited school "that will lead to the awarding of the D.M.D or D.D.S. degree by that school." *Id.* at 332a-34a (quoting 49 Pa. Code § 33.102(a)(2)). The hearing examiner determined Pennsylvania's licensing requirements exceeded Florida's licensing requirements, because Pennsylvania requires applicants to obtain a D.M.D. or D.D.S. degree, while Florida does not. *Id.* at 336a.

In reaching this determination, the hearing examiner specifically rejected Dr. Ramirez's contention that Pennsylvania law does not require applicants to obtain a D.M.D. or D.D.S. degree, so long as they receive additional education "that will lead to the awarding of the D.M.D. or D.D.S. degree." R.R. at 336a (quoting 49 Pa. Code § 33.102(a)(2)). The hearing examiner explained this interpretation was contrary to Section 3(c) of The Dental Law,[2] which requires applicants to have "a diploma from an approved institution or college conferring upon him or her the degree of doctor of dental surgery [(D.D.S.)] or other established dental degree." *Id.* at 332a, 336a (quoting 63 P.S. § 122(c)). From the hearing examiner's perspective, 49 Pa. Code § 33.102(a)(2) served "to confirm [T]he Dental Law's requirement and avoid a situation, such as the one presented in the instant case, where the applicant completed a program that did not 'lead to the awarding of the D.M.D. or D.D.S. degree by that school,' thus making the candidate statutorily ineligible for licensure." R.R. at 336a.

The Board issued a notice of intent to review the hearing examiner's proposed adjudication and order, and Dr. Ramirez filed a brief on exceptions. Generally, Dr. Ramirez repeated her contentions that Pennsylvania law does not require applicants to obtain an D.M.D. or D.D.S. degree, and that the Board was requiring Florida to

---

[2] Act of May 1, 1933, P.L. 216, *as amended*, 63 P.S. § 122(c).

have equal, rather than substantially equivalent, licensing requirements. She argued the Board violated her due process rights because it failed to promulgate regulations implementing licensure by endorsement and failed "to evaluate the statutory and regulatory schemes of Pennsylvania and Florida" when determining whether the two states' requirements are substantially equivalent. R.R. at 348a, 364a-66a. The Commonwealth filed a brief in opposition, recommending that the Board adopt the hearing examiner's proposed adjudication and order.

On January 18, 2023, the Board issued a final adjudication and order, adopting the hearing examiner's proposed adjudication, with amendments, and denying Dr. Ramirez's application. The Board responded to Dr. Ramirez's exceptions, rejecting her argument that Pennsylvania law does not require applicants to obtain a D.M.D. or D.D.S. degree. The Board maintained it was entitled to deference regarding its interpretation of The Dental Law. The Board explained it interpreted The Dental Law to require a D.M.D. or D.D.S. degree from an accredited school for graduates of nonaccredited, foreign schools and promulgated 49 Pa. Code § 33.102(a)(2) to "confirm [T]he Dental Law's requirement." Final Adjudication and Order, 1/18/23, at 4-5.[3]

Moreover, the Board rejected Dr. Ramirez's contention that Florida's dental licensing requirements are substantially equivalent to those in Pennsylvania. The Board reasoned that Section 3111(a)(1) limited its review "to a comparison of the statutes, rules and regulations for the initial licensing requirements" of Pennsylvania and Florida. Final Adjudication and Order, 1/18/23, at 12. Accordingly, the Board could not consider whether Dr. Ramirez's individual experiences are substantially equivalent to Pennsylvania's licensing requirements. The Board emphasized Florida

---

[3] The Board's Final Adjudication and Order does not appear in the reproduced record.

6

does not require graduates of nonaccredited, foreign schools to obtain a D.M.D. or D.D.S. degree before being licensed. It described this as "a significant difference" between the requirements in Florida and Pennsylvania. *Id.*

With respect to due process, the Board explained it provided Dr. Ramirez with notice of its decision and an opportunity to respond. Although the Board conceded it did not promulgate regulations implementing licensure by endorsement, it noted that it had "discussed the requirements for licensure by endorsement at several public board meetings." Final Adjudication and Order, 1/18/23, at 7. The Board reasoned it retained the power to regulate licensure in the interest of public protection, and Dr. Ramirez had no vested right to practice as a dentist.

Dr. Ramirez filed a petition for review in this Court and now raises essentially the same arguments she raised below. Dr. Ramirez contends (1) Pennsylvania does not require applicants who graduated from a nonaccredited dental school to obtain a D.M.D. or D.D.S. degree, (2) Florida's licensing requirements are substantially equivalent to Pennsylvania's licensing requirements, and (3) the Board violated her right to due process.

## II. Discussion

We review the Board's decision for violations of Dr. Ramirez's constitutional rights, violations of agency practice and procedure, and other legal errors. 2 Pa.C.S. § 704. We also review whether substantial evidence supports the Board's necessary factual findings. *Id.* This Court may disturb the Board's decision if it committed an abuse of its discretion, exceeded its authority, or misapplied the law. *Hammad v. Bureau of Pro. & Occupational Affs., State Bd. of Veterinary Med.*, 124 A.3d 374, 380 n.7 (Pa. Cmwlth. 2015) (citing *Nelson v. State Bd. of Veterinary Med.*, 863 A.2d 129, 132 n.4 (Pa. Cmwlth. 2004)).

7

**A. Pennsylvania's dental licensing requirements**

We first address Dr. Ramirez's claim that Pennsylvania law does not require graduates from nonaccredited schools to obtain a D.M.D. or D.D.S. degree. *See* Dr. Ramirez's Br. at 10, 14-18. Section 3(c) of The Dental Law provides the Board with the power and duty to license an applicant "who has obtained the required education, together with a diploma from an approved institution or college conferring upon him or her the degree of [D.D.S.] or other established dental degree." 63 P.S. § 122(c). The Board's regulations provide:

> (a) *Dentists*.
>
>> (1) Candidates for licensure as dentists shall show compliance with [S]ection 3(c) of [The Dental Law] which requires a diploma from an "approved institution or college," by submitting certification of graduation from a dental school accredited or provisionally accredited by [CODA].
>>
>> (2) Candidates for licensure who received their professional education outside the United States in a nonaccredited school may satisfy the education requirement by submitting their credentials to an accredited or provisionally accredited school and obtaining additional preclinical and clinical training that will lead to the awarding of the D.M.D. or D.D.S. degree by that school.

49 Pa. Code § 33.102(a).

Dr. Ramirez cites the language in Section 3(c) of The Dental Law, providing for the licensure of applicants with a D.D.S. or "other established dental degree." 63 P.S. § 122(c). Dr. Ramirez argues Section 3(c) "may reasonably be read to include a certificate issued by a CODA-accredited institution at the level of a D.M.D. or D.D.S. program," such as the certificates she received from the AEGD program. Dr.

Ramirez's Br. at 16-17. She maintains the Board's contrary interpretation renders the "other established dental degree" language superfluous and defeats the purpose of Section 3111(a). *Id.* at 16-18. Similarly, Dr. Ramirez repeats her argument that 49 Pa. Code § 33.102(a)(2) allows an applicant to complete education "that will lead to the awarding of the D.M.D. or D.D.S. degree" without actually obtaining a degree. Dr. Ramirez's Br. at 16, 27-28.

The Board may "adopt, promulgate, and enforce such rules and regulations as may be deemed necessary by the [B]oard and proper to carry into effect" its powers under The Dental Law. 63 P.S. § 122(o). The Board's powers include an ability to "provide for and to regulate" dental licensing in Pennsylvania and to "establish and alter, from time to time, the standards of preliminary and professional education and the training required for licensure to practice dentistry." 63 P.S. § 122(a), (c). Significantly, the Board may also "provide for the licensing of graduates of foreign dental schools[4] in accordance with [S]ection 6.2" of The Dental Law.[5] Section 6.2(b) provides:

> It is the intent of the General Assembly that the provisions of this section be construed liberally in order to ensure the establishment of viable and accessible programs through which graduates of foreign dental schools may obtain such further preclinical and clinical training as shall lead to the awarding of the D.M.D. or D.D.S. degree at accredited dental schools in this Commonwealth in order to qualify for licensure under the provisions of this act.

63 P.S. § 125.2(b).

---

[4] Section 2 of The Dental Law, 63 P.S. § 121, defines "foreign dental schools" as "dental schools which have not been approved by [CODA] and which are located in countries other than the United States or Canada."

[5] Added by Section 7 of the Act of December 20, 1985, P.L. 513, 63 P.S. § 125.2.

Thus, The Dental Law expressly permits the Board to promulgate regulations governing the education necessary to become licensed as a dentist in Pennsylvania, both for graduates of accredited schools and nonaccredited schools. *See Marcellus Shale Coal. v. Dep't of Env't Prot.*, 216 A.3d 448, 459 (Pa. Cmwlth. 2019) (*en banc*). An agency may not promulgate regulations inconsistent with an enabling statute. *Id.* (citing *Slippery Rock Area Sch. Dist. v. Unemployment Comp. Bd. of Rev.*, 983 A.2d 1231, 1241 (Pa. 2009)). Here, however, we discern no inconsistency between the Board's regulations and The Dental Law. Section 3(c) of The Dental Law addresses the education necessary to obtain licensure as a dentist in broad terms, presumably so the Board may exercise its authority and determine specific requirements. *See* 63 P.S. § 122(c). The language of 49 Pa. Code § 33.102(a)(2), meanwhile, tracks our General Assembly's directive in Section 6.2(b) that graduates of foreign schools may receive licensure if they obtain additional education that will "lead to the awarding of the D.M.D. or D.D.S. degree." 63 P.S. § 125.2(b). Dr. Ramirez's contention that an applicant may receive an education "that will lead to the awarding of the D.M.D. or D.D.S. degree" without obtaining a degree is simply an unreasonable reading of this unambiguous statutory and regulatory language.

## B. Substantial equivalence

Next, we consider Dr. Ramirez's argument that she was entitled to licensure by endorsement. Section 3111(a) governs licensure by endorsement for out-of-state professionals under the Bureau of Professional and Occupational Affairs. It provides five factors an applicant must satisfy to obtain licensure:

> **(a) General rule.--**Notwithstanding any existing provisions related to licensure by endorsement or licensure by reciprocity in an applicable licensing statute, a licensing board or licensing commission shall issue a license, certificate, registration or permit to an applicant to allow practice in this Commonwealth if, upon application to the licensing

10

board or licensing commission, the applicant satisfies all of the following conditions:

(1) Holds a current license, certificate, registration or permit from another state, territory or country and the licensing board or licensing commission determines that state's, territory's or country's requirements are substantially equivalent to or exceed the requirements established in this Commonwealth.

(2) Demonstrates competency in the profession or occupation through methods determined by the licensing board or licensing commission, including having completed continuing education or having experience in the profession or occupation for at least two of the five years preceding the date of the application under this section.

(3) Has not committed any act that constitutes grounds for refusal, suspension or revocation of a license, certificate, registration or permit to practice that profession or occupation in this Commonwealth unless the licensing board or licensing commission determines, in its discretion, that the act should not be an impediment to the granting of a license, certificate, registration or permit to practice in this Commonwealth.

(4) Is in good standing and has not been disciplined by the jurisdiction that issued the license, certificate, registration or permit unless the licensing board or licensing commission determines, in its discretion, that the discipline should not be an impediment to the granting of a license, certificate, registration or permit to practice in this Commonwealth.

(5) Pays any fees established by the licensing board or licensing commission by regulation.

63 Pa.C.S. § 3111(a).

The only factor at issue in this case is Section 3111(a)(1), which directs that the licensing requirements of an applicant's prior jurisdiction must be substantially

11

equivalent to, or exceed, the licensing requirements in Pennsylvania. Dr. Ramirez contends the Board should have liberally construed Section 3111(a)(1) in her favor. Dr. Ramirez's Br. at 19-22. She contends the Board did not "conduct a meaningful analysis and evaluation" of the two states' requirements and should have considered such factors as "course content, total length of programs, and overall training offered by educational institutions to foreign-trained dentists" when determining substantial equivalence. *Id.* at 18, 23, 30-38. Indeed, she argues the Board "did not undertake any analysis or exercise any discretion, but instead . . . followed a perfunctory rule that did not require any investigation or discretion." *Id.* at 34. Dr. Ramirez compares the requirements in Florida and Pennsylvania, emphasizing their similarities. *Id.* at 24-29. In addition, she cites Dr. Boyle's testimony for the proposition that her two years of study in the AEGD program were comparable to, or exceeded, the education she would have received in a D.M.D. or D.D.S. program. *Id.* at 18-19, 30-31.

This Court recently addressed a similar dispute in *Haentges v. State Board of Dentistry* (Pa. Cmwlth., No. 348 C.D. 2022, filed December 21, 2023). In that case, a dentist from New York State, Dr. Haentges, filed an application for licensure by endorsement in Pennsylvania. *Id.*, slip op. at 2. The Board denied the application, reasoning that the dental licensing requirements in New York were not substantially equivalent to those in Pennsylvania. *Id.*, slip op. at 6-7. Dr. Haentges completed a one-year clinical residency after graduating from dental school to obtain a New York dental license. *Id.*, slip op. at 3. The Board determined Dr. Haentges' residency was not substantially equivalent to the clinical examination required to obtain a license in Pennsylvania. *Id.*, slip op. at 6-7.

On appeal, we reversed and remanded. We defined "substantially equivalent" to mean that "the licensing requirements of an applicant's state, territory, or country,

12

when viewed as a whole, must be equal in their essential respects, or largely equal, to Pennsylvania's licensing requirements." *Haentges*, slip op. at 13 (footnote omitted). The Board misinterpreted Section 3111(a)(1), we explained, by requiring New York's licensing requirements to be exactly the same as those in Pennsylvania. *Id.*, slip op. at 14-15. Further, the Board emphasized competency when determining substantial equivalence, although the statute contained a separate competency factor at Section 3111(a)(2) and other "safeguards" at Section 3111(a)(3)-(4). *Id.*, slip op. at 15. We agreed with the Board that Section 3111(a)(1) directed it to consider licensing "requirements," rather than Dr. Haentges' individual experiences, but we noted the Board looked beyond Pennsylvania's requirements to justify its decision. *Id.*, slip op. at 15-16. The Board claimed to review the "plain letter of the licensing laws" to determine substantial equivalence, but it relied primarily on information regarding Pennsylvania's clinical examination from outside the licensing statute and regulations. *Id.*, slip op. at 7, 15-16.

Even accepting that the Board did not commit an error law in its interpretation of Section 3111(a)(1), we concluded it abused its discretion. *Haentges*, slip op. at 17. The Board insisted Dr. Haentges' clinical residency, which lasted one year and involved treating live patients, was inferior to the clinical examination required in Pennsylvania, which lasted as little as two days and could be performed entirely on a "manikin." *Id.*, slip op. at 3-5. Under the circumstances, New York's licensing requirements were substantially equivalent to, or exceeded, Pennsylvania's licensing requirements, "by any reasonable measure."[6] *Id.*, slip op. at 17.

This case bears some similarity to *Haentges*. Once again, the Board appears to have interpreted "substantially equivalent" under Section 3111(a)(1) to mean that

---

[6] We remanded for the Board to consider Section 3111(a)(2)-(5) because it had not addressed those factors when reaching its decision. *Haentges*, slip op. at 18.

13

licensing requirements of an applicant's state, territory, or country must be exactly the same as those in Pennsylvania. The Board's pronouncement that a jurisdiction's requirements will only be substantially equivalent if they "require[] an applicant to have a D.M.D. or D.D.S.," R.R. at 41a-42a, refuses to consider the possibility that another jurisdiction might have equally rigorous education requirements that do not result in the award of either degree.

Nonetheless, a comparison of the dental licensing requirements in Florida and Pennsylvania supports the conclusion that Florida's requirements are not "equal in their essential respects, or largely equal," to Pennsylvania's requirements. *Haentges*, slip op. at 13. Florida's licensing statute provides as follows, in relevant part:

> (2) An applicant shall be entitled to take the examinations required in this section to practice dentistry in this state if the applicant:
>
> . . . .
>
> (b) 1. Is a graduate of a dental school accredited by [CODA] or its successor entity, if any, or any other dental accrediting entity recognized by the United States Department of Education; or
>
> 2. Is a dental student in the final year of a program at such an accredited dental school who has completed all the coursework necessary to prepare the student to perform the clinical and diagnostic procedures required to pass the examinations. With respect to a dental student in the final year of a program at a dental school, a passing score on the examinations is valid for 365 days after the date the examinations were completed. A dental school student who takes the licensure examinations during the student's final year of an approved dental school must have graduated before being certified for licensure pursuant to [Section] 466.011.
>
> . . . .
>
> (3) If an applicant is a graduate of a dental college or school not accredited in accordance with paragraph (2)(b) or of a dental college or school not approved by the board, the applicant is not entitled to take

14

the examinations required in this section to practice dentistry until she or he satisfies one of the following:

(a) Completes a program of study, as defined by the board by rule, at an accredited American dental school and demonstrates receipt of a D.D.S. or D.M.D. from said school; or

(b) Submits proof of having successfully completed at least 2 consecutive academic years at a full-time supplemental general dentistry program accredited by [CODA]. This program must provide didactic and clinical education at the level of a D.D.S. or D.M.D. program accredited by [CODA]. For purposes of this paragraph, a supplemental general dentistry program does not include an advanced education program in a dental specialty.

Fla. Stat. § 466.006(2)(b), (3) (2022).

Florida requires a dentist who earned a degree from a nonaccredited school to complete "at least 2 consecutive academic years at a full-time supplemental general dentistry program," which must "provide didactic and clinical education at the level of a D.D.S. or D.M.D. program." Fla. Stat. § 466.006(3)(b) (2022). Pennsylvania requires a dentist who earned a degree from a nonaccredited school to complete a D.D.S. or D.M.D. program and earn the degree he or she would have obtained by attending an accredited school. 49 Pa. Code § 33.102(a)(2). Florida's educational requirements are markedly less stringent than those in Pennsylvania.

We held in *Haentges*, as explained above, that Section 3111(a)(1) required the Board to determine substantial equivalence by considering the "requirements" of an applicant's jurisdiction, rather than his or her individual experiences. *Haentges*, slip op. at 15. Despite this, it is important to recognize Dr. Ramirez's evidence regarding Columbia University's AEGD program belies her argument that Florida's licensing requirements are substantially equivalent. Dr. Boyle testified a student in the AEGD program could obtain an "[e]quivalent [D.D.S.] degree" by completing three years of study. R.R. at 104a-08a. The fact Dr. Ramirez did not complete the three years

15

necessary to obtain an "[e]quivalent [D.D.S.] degree" supports the conclusion that the two years she did complete are not equivalent to a D.M.D. or D.D.S. program.[7] *See id.*

**C. Due process**

Finally, Dr. Ramirez argues the Board violated her right to due process. She contends the Board failed to comply with the General Assembly's directive that it promulgate regulations implementing licensure by endorsement. Dr. Ramirez's Br. at 34-36. Because the Board did not promulgate regulations, Dr. Ramirez contends, she received no guidance regarding the criteria it would use when making substantial equivalence determinations. *Id.* Dr. Ramirez emphasizes she has the right to pursue her profession. *Id.* at 37-38. She maintains the Board deprived her of that right and reached a decision contrary to the General Assembly's intent of "open[ing] up the Commonwealth to qualified professionals who are licensed in another jurisdiction and remove administrative barriers for those out-of-state professionals to practice in the Commonwealth." *Id.* at 38.

The language found at Section 3111(a) originally appeared in the Act of July 2, 1993, P.L. 345, *as amended*, added by Section 1 of the Act of July 1, 2019, P.L. 292, No. 41 (Act 41), *formerly* 63 P.S. § 2206.1(a). The General Assembly repealed and replaced the Act of July 2, 1993, P.L. 345, by the Act of July 1, 2020, P.L. 575, resulting in the language's current placement at 63 Pa.C.S. § 3111. Section 2 of Act 41 directed "each licensing board and commission" to promulgate final regulations

---

[7] This decision is not meant to suggest the Board may deny licensure by endorsement to a Florida dentist who earned a D.M.D. or D.D.S. degree simply because, theoretically, he or she could have obtained a Florida dental license without one.

"within 18 months of the effective date of this section." The Board concedes it did not promulgate the necessary regulations under Act 41.[8] Board's Br. at 23.

This Court does not condone the Board's failure to promulgate regulations in compliance with our General Assembly's directive. We recently rejected a similar argument, however, in *Lebron v. Public School Employees' Retirement Board*, 245 A.3d 300 (Pa. Cmwlth. 2020). We explained in that case we were unaware of "any case law declaring that an administrative agency's failure to promulgate regulations creates legal rights in an individual." *Id.* at 316. Despite acknowledging the Public School Employees' Retirement Board failed to comply with a statutory requirement to promulgate regulations, we held it did not deprive the petitioner of his due process rights. *Id.*

Further, article 1, section 1 of the Pennsylvania Constitution provides that all people "have certain inherent and indefeasible rights, among which are those of . . . possessing and protecting property . . . and of pursuing their own happiness." Pa. Const. art. I, § 1. The rights to possess property and pursue happiness include within them the right to pursue one's chosen occupation. *Ladd v. Real Est. Comm'n*, 230 A.3d 1096, 1108 (Pa. 2020) (citing *Nixon v. Commonwealth*, 839 A.2d 277, 288 (Pa. 2003)). The right to pursue a chosen occupation is not fundamental or absolute, and it "remains subject to the General Assembly's police powers, which it may exercise to preserve the public health, safety, and welfare." *Id.* (citing *Nixon*, 839 A.2d at 287; *Gambone v. Commonwealth*, 101 A.2d 634, 636 (Pa. 1954)).

Dr. Ramirez relies on case law explaining, under a substantive due process analysis, that a statute or regulation violates the right to pursue a chosen occupation

---

[8] Section 3 of Act 41 provided it would take effect in 60 days, or on August 30, 2019, meaning the deadline to promulgate regulations was Monday, March 1, 2021. *See* 1 Pa.C.S. § 1908. The Act of July 1, 2020, P.L. 575, did not direct licensing boards or commissions to promulgate regulations.

17

if it is unreasonable, unduly oppressive, beyond the necessities of the case, or overly broad. Dr. Ramirez's Br. at 38 (citing *Johnson v. Allegheny Intermediate Unit*, 59 A.3d 10, 21 (Pa. Cmwlth. 2012) (*en banc*)). She does not specifically challenge any statute or regulation, or otherwise develop this aspect of her argument. To the extent Dr. Ramirez contends the Board's requirement that she obtain a D.M.D. or D.D.S. degree, as codified in 49 Pa. Code § 33.102(a)(2), violates substantive due process, we disagree. The requirement that an applicant obtain a degree from an accredited institution is eminently reasonable and related to the government's valid interest in protecting the public by ensuring dentists have adequate education and training. *See Johnson*, 59 A.3d at 21; *Ladd*, 230 A.3d at 1108-10.

### III. Conclusion

Accordingly, we conclude Dr. Ramirez is not entitled to relief, and we affirm the Board's January 18, 2023 final adjudication and order.

_____
STACY WALLACE, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Amaris Ramirez,                :
               Petitioner    :
                            :
        v.                  : No. 144 C.D. 2023
                            :
State Board of Dentistry,       :
               Respondent :

# **O R D E R**

**AND NOW**, this 11th day of January 2024, the Board of Dentistry's January 18, 2023 final adjudication and order is **AFFIRMED**.

_____
STACY WALLACE, Judge